[S. C., 5 Hay., 101; 2 Tenn., 399.]
In Error. —
This action of ejectment was commenced on the 19th of December, 1811; was tried in the Circuit Court the second Monday of March, 1815. Two bills of exceptions were tiled, and the cause was removed into this court. In these bills are stated the following facts: The lessee of the plaintiffs gave in evidence, on the trial, a grant to Phillips from this State, dated 11th September, 1811; also, a copy of the entry on which it is issued. "April 11, 1797, E. D. Barry, 1000 acres joining the above on the upper side, running up the creek on both sides for quantity, No. of location 7179." Also the copy of another entry made on the same day. No. of location 7178. "R. D. Barry 640 acres on a small creek, running into the cast fork of Stone's River, opposite to Isaac Shelby's 5000 acre tract, joining Bushnell and Dobbins on the north, running up the creek on both sides for complement." The bounds of this grant included the tract on which the defendant lived. The defendant's grant was dated in 1809, and includes the said tract on which he lived. The lessor of the plaintiff also gave in evidence a grant to Barry for 640 acres from the State dated the 27th of November, 1809, founded on said entry 7178. The lessor of the plaintiff introduced a plat, and proved its representations to be correct. He proved further, that before the date of the entry under which the lessor of the plaintiff claims, the lines of Shelby's tract, and of Bushnell and Dobbins's tract, were old lines, and run and marked as represented in the plat. The plat represents Shelby's tract as lying on both sides the river, and Bushnell and Dobbins's as lying on the north of that. It represents two creeks running into the river on the east side. The first or upper creek *Page 155 
discharges itself into the river on the south boundary of Bushnell and Dobbins, after passing near the north-east boundary. The other, or lower creek, emptying in the river beyond the western boundary near to the north-west corner. The mouth of the first, or upper creek, is opposite to Shelby's 5000 acre tract. The mouth of the second is not, but is beyond its boundaries. The 640 acre entry was surveyed so as to join Bushnell and Dobbins on the north, beginning at the north-west corner, and includes no part of the upper creek; the lines of this survey include the head of the lower creek. Nash was the locator and surveyor of 7178 and 7179. Soon after making the entries he made plats and certificates of survey, representing the bounds as they now are. In 1803. Dougherty, under a purchase from Barry, took possession of said 640 acres under the said entry, claiming the same in the manner and place now represented in said plat, and has continued that possession ever since. The lessor of the plaintiff deriving his title under Barry to the 1,000 acres, claimed the same as since surveyed and granted and represented in said plat; by which representation the south part of its western boundary is in or near the eastern boundary of the 640 acre tract sold to Dougherty, in an oblong form; its western and eastern boundaries being the longest lines of the parallels given. Its southern boundary adjoining to the northern boundary of Bushnell and Dobbins, and terminating near the north-east corner of Bushnell and Dobbins. The plaintiff's claim was known to the people generally of that neighborhood. Had the 640 acre survey been made on the upper crook joining the north of Bushnell and Dobbins, the 1000 acres might also have been surveyed on the creek, above and on both sides, and would not have interfered with the defendant. The lessor of the plaintiff offered to prove that in 1806, and before the defendant took possession of the land in dispute, the defendant agreed with *Page 156 
the lessor of the plaintiff that he would settle on said lands, and hold them for him for some years; would clear ten acres and build a cabin, and leave it in good repair; and, pursuant to this contract, entered; and at the end of the time refused to give possession to the lessor of the plaintiff. The Court refused to receive this evidence. The 640 acres are on both sides of the lower creek, from that part of it which intersects the north boundary of Bushnell and Dobbins to its head.
The grant of Phillips relates to the date of the entry, 7179, if it be a special entry. If special, it is made so by reference to the entry, 7178. What is the meaning of the term opposite? Does it refer to the mouth of the creek, or to the land entered? It is to join Bushnell and Dobbins on the north. Would it be more precise to say, also, that the land entered should be opposite Shelby's tract, which is of greater extent than that of Bushnell and Dobbins? If referred to the land this term is of no use; because it creates no specification more pointed than was already made. If referred to the mouth of the creek, they have an operative influence in the description. It is too unsafe to say that any reliance ought to be placed on the locator and surveyor being the same person, for then his actions, and not the entry would be the standard. Nor can his plat and certificate be relied on, made soon after these entries, for These are not recorded in public books, which those concerned may resort to for information. Nor can Dougherty's possession avail anything; for that may cure an uncertainty, but not remove a certain entry from its proper place. Supposing it doubtful which of the two creeks were meant, these or such like circumstances might have fixed it to either. Of the same character is the recognition of the neighborhood. "Opposite to Isaac Shelby's 5000 acre tract," has also this advantage, which, though far from being decisive, weighs something; it refers grammatically to the creek, which is the last antecedent. That, however, ought *Page 157 
not to prevail, if, by any certain sign, it can be perceived that in meaning it refers to the term land. Search, then, for that sign; it would not be rendered more precise, such reference would be of no use, it would impair the text. If referred to the creek, it has a plain and substantial meaning, very material in this cause. The latter construction ought to be adopted. Nothing is said in the exceptions concerning John's survey laid down in the plat. Perhaps it was an older entry than 1797, and was not known to the locator of 7178, when he made it. Again, the survey may as well on the upper creek join Bushnell and Dobbins in part, as that laid on the lower creek; also, by extending into John's tract, it may lie on both sides of the creek; and what evidence is there that that was not the intent of the entry? Who can say the locator knew of this claim when he made the entry? Again, the 1000 acres may adjoin the 640 laid on the upper creek, above it, and run off on both sides for complement. But, on the lower creek, which is the upper side; the north or east boundary? The creek does not cross either. Here is no creek on both sides of which the 1,000 acres centre. If the length was not known to the locator nor the mouth, neither might he have known of John's claim. If he knew both the length and mouth he could not have meant this creek. Dougherty's possession, what effect would it have? He was safe by a grant before the commencement of the conflicting claim. That would be the case whether his survey were made upon the right place or not. It does not prove that he was upon the right place. I am constrained to believe the survey is misplaced. The grant of the defendant, which came out before that of the plaintiff, is prior to and better than that of the plaintiff, which can not refer to an entry so as to relate to it unless that entry covers the place which also is covered by the grant. The entry, in order to be special, ought to be such as will, by inspection, show *Page 158 
to one acquainted with that part of the country where it is intended to be that it does lie there. It need not be as exactly described as a survey will describe it; it is sufficient if the place of beginning be specified, or some spot to be included or touched, or which is to form its boundary or part of it, and the objects called for be found. The survey will ascertain the rest, running to the cardinal points where not obviated by elder claims, and taking the direction which the entry or some circumstance in it may point out. Not regarding the centrality of the object, nor laying; the lands equally on both sides of a watercourse, unless specially directed in the entry; and then, not so as to depart from the cardinal points. If there be a general call to He on both sides, there ought in the survey to be a substantial compliance, though there need not be an equality on both sides. The verdict, therefore, ought not to be set aside on any of the preceding grounds.
But is the defendant estopped by his former tenancy under the plaintiff from denying the title of the lessor of the plaintiff? One who has acted as tenant ought not to set up the title of a third person. For the tenant derives his title from the landlord. 1 Term E. 760, in a note. He can not question his landlord's title, but must give up the possession. 2 Caines, 215; 1 Caines, 444; 2 Peake, 318; 1 T. 4; 7 T. 491. A lessee shall not be suffered to defend in ejectment against his own landlord on a supposed defect of title, 2 Bl. 1261; 3 Johnston, 223. What is the reason of all this? The prevention of unfair dealing is the object of this rule. It is founded upon the anxious wish of the law to defeat the violations of good faith, and to preserve the confidence amongst men which faithless violations of engagements annihilates. The tenant, before he exerts any intermediate title to himself, not derived under his landlord, must place his landlord, as to the possession, in the state in which he found him. The verbal lease for five years, if not good in law to vest the term in the *Page 159 
defendant, still was an agreement under which the defendant took possession. Such remnant of the contract remains good as is sufficient to prevent making any use of the possession not contemplated between the parties, or any use of it that will be detrimental to the landlord. He ought to restore the possession to his landlord, and place him instatu quo.
For this reason the verdict ought to be set aside, that this evidence may be received.